UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>BIGTIME HOUSING FOUNDATION, LLC,<br><br>Defendant. | No. 2:26-cv-00610-SCR<br><br>ORDER |

Now before the Court is Plaintiff's motion to appoint a receiver. ECF No. 6. The parties have consented to magistrate judge jurisdiction and this matter has been assigned to the undersigned for all proceedings. ECF No. 8. Opposition and reply briefs were filed, and the Court heard argument on the motion on April 30, 2026. For the reasons explained below, the motion to appoint a receiver will be denied. However, Defendant will be ordered to turn over all rents from the property that is the subject of this dispute, pending adjudication of the claims in this case.

**I. Procedural History and Background**

Plaintiff filed this action on February 26, 2026. ECF No. 1. Plaintiff's complaint alleged breach of contract on a loan agreement and sought judicial foreclosure and the appointment of a receiver. ECF No. 1. Plaintiff alleges that Defendant entered into a loan agreement (the "Loan

Agreement") with Arbor Commercial Funding I, LLC ("Arbor") in April 2019, for the amount of $1,261,000, and that the loan was secured by a Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Deed of Trust"). *Id*. at ¶¶ 8-9. The Deed of Trust covers real and personal property located at 2755 El Caprice Drive, Rancho Cordova, California (the "Property"). *Id*. at ¶ 10. Arbor assigned the Deed of Trust to Plaintiff. *Id*. at ¶ 11.

Plaintiff alleges that Defendant is in default under the Loan Agreement in several respects. Plaintiff alleges Defendant has been chronically late with loan payments in breach of section 2.02(a)(3) of the Loan Agreement. *Id.* at ¶ 16. Plaintiff further alleges that Defendant has: 1) failed to maintain insurance in violation of Section 9.02; 2) failed to maintain Single Asset Status in violation Section 4.02(d); and 3) made an unauthorized transfer of a portion of the Property without prior approval of Plaintiff in violation of Section 11.02(b). *Id*. at ¶¶ 16-18. Plaintiff alleges that it gave Defendant at least two opportunities to cure, prior to sending a Notice of Default on January 22, 2026. *Id.* at ¶¶ 20-21. Plaintiff contends that all amounts are due under the Note and that Defendant's right to collect rents has been revoked. *Id*. at ¶ 27.

According to the return of service, Defendant was served on March 5, 2026, and an Answer was due by March 26, 2026. ECF No. 5. On March 26, 2026, Plaintiff filed the motion for appointment of a receiver ("Receiver Motion"). ECF No. 6. Defendant filed an opposition to that motion (ECF No. 9), supported by the declarations of Enoch Duplechan and John R. Garner. Plaintiff filed a reply. ECF No. 11.

The Court held a hearing on the motion on April 30, 2026. ECF No. 12. At the hearing, the parties advised that a potential settlement agreement was under consideration. The Court raised several issues concerning the Receiver Motion on which additional information would be useful. After the hearing, the Court issued an order allowing the parties time to discuss settlement and setting a supplemental briefing schedule on the following topics: 1) insurance coverage; 2) whether payments continued to be made after December 2025 and if Defendant is current; 3) documentation that the subordinate debt has been extinguished; and 4) the outcome of the April 20, 2026 property inspection. ECF No. 12.

On May 21, 2026, the parties filed a Joint Status Report stating that settlement discussions

had not resolved the case. ECF No. 13. On June 1, 2026, the parties filed supplemental briefing and exhibits. ECF Nos. 16 & 17. On June 25, 2026, Defendant filed an untimely Answer (ECF No. 18) and a Third-Party Complaint (ECF No. 19) against Arbor. Defendant alleges that Arbor was the original lender on the loan and that Arbor wrongfully placed, maintained, concealed, and charged for duplicate lender-placed insurance which cost Defendant more than $32,000 in premiums. ECF No. 19 at ¶¶ 3-4.

## II. Legal Standard

Appointment of a receiver is "an extraordinary equitable remedy, which should be applied with caution." *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (citation and quotation omitted). There is "no precise formula" for determining whether a receiver should be appointed, and rather the court will consider a variety of factors. *Id*. Those factors include: 1) whether the party seeking appointment has a valid claim; 2) whether there is fraudulent conduct or the probability of such by defendant; 3) whether there is imminent danger to the property; 4) whether legal remedies are inadequate; 5) whether the harm to plaintiff of denying the motion would outweigh injury to the opposing party; 6) plaintiff's probable success in the action and chance of irreparable injury to the interest in property; and 7) whether the plaintiff's interests would be well-served by the receivership. *Id*. It is also appropriate for the court to consider "whether the property was of insufficient value to insure payment and whether the defendant was of doubtful financial standing." *Id*., citing *View Crest Garden Apartments, Inc. v. United States*, 281 F.2d 844, 847 (9th Cir. 1960). The court has "broad discretion" in considering these factors and determining whether to appoint a receiver. *Id*. at 847. The appellate court reviews such decisions for abuse of discretion. *Id*. at 844.

## III. Motion to Appoint a Receiver (ECF No. 6)

### A. Federal Receivership Law Applies

Plaintiff states that it is entitled to the appointment of a receiver pursuant to California Code of Civil Procedure § 564(b) and Civil Code § 2938. ECF No. 6 at 12. Plaintiff's reliance on state law is incorrect. In diversity actions, federal law—and Federal Rule of Civil Procedure 66, in particular—governs the appointment of receivers. *See Canada Life*, 563 F.3d at 842;

*Avalanche Funding, LLC v. Arif*, 2021 WL 1664433, *3 (E.D. Cal. April 28, 2021) ("Federal Rule of Civil Procedure 66 permits the Court to appoint a receiver."). As the Ninth Circuit has stated, "[n]ot only does Rule 66 require application of the federal rules in an action where the appointment of a receiver is sought, it specifically indicates a normative standard for uniform administration of receiverships in accordance 'with the historical practice in federal courts[.]'" *Canada Life*, 563 F.3d at 842. The Ninth Circuit concluded that federal law governs the issue of whether to appoint a receiver and "regardless of whether state law provides a vehicle by which to appoint a receiver, the federal courts are free to provide that remedy solely by virtue of their equitable powers." *Id*. at 843. Thus, the multi-factor analysis from *Canada Life* applies, rather than state law. Under this framework, "no one factor is dispositive." 563 F.3d at 845.

**B. Application of the *Canada Life* Factors**

**1. Validity of Plaintiff's Claim**

The first *Canada Life* factor asks whether the Plaintiff has a valid claim. Plaintiff has submitted evidence of its interests under the Loan Agreement and Deed of Trust. ECF No. 6-1. Under the Loan Agreement, payments are due on the "Payment Date" which means the first day of the month. ECF No. 6-1 at 16 & 100. Plaintiff presented the Declaration of Jon D'Amico, a vice president at Arbor, who services the loan. ECF No. 6-3. D'Amico avers that the payments have been chronically late, at least in the May 2025 to December 2025 timeframe. *Id.* at ¶ 5. He further states Defendant has failed to maintain insurance as required by the Loan Agreement. *Id*. at ¶ 6. The D'Amico declaration is also offered as support for Plaintiff's claims that Defendant has failed to maintain Single Asset Status by commingling funds and has made a "transfer" of part of the Property by recording a second deed of trust against it. *Id*. at ¶¶ 7-8.

Defendant's opposition (ECF No. 9) is a brief three-pages, but is supported by a Declaration from Enoch Duplechan, Defendant's principal. Duplechan states that "no funds have ever been commingled with any other entity or person" and thus the single-asset status has been maintained. ECF No. 9-1 at ¶ 3. He also disputes the unauthorized transfer concerning a second deed of trust, but in doing so appears to concede it was not processed with the prior approval of Plaintiff. *Id.* at ¶ 4. However, he argues this did not impair Plaintiff's security interest and was

not a default under the Loan Agreement. *Id*. Plaintiff also states: "Steps are currently being taken to correct this: the lien will be removed within the next 20 days—well before the April 30, 2026 hearing." *Id*. The lien was not removed prior to the April 30, 2026 hearing. Defendant's supplemental briefing filed on June 1, 2026, states that it has "obtained a concrete path to remove the disputed second encumbrance[.]" ECF No. 17 at 2. Defendant provides a letter from Forbix Capital Corporation stating that it is willing to accept alternative collateral and will remove the lien on the Property. ECF No. 17-1 at 23 (Exh. C).

Duplechan also contests the assertion of Defendant's chronically late payments, calling it "false and grossly misleading[.]" *Id*. at ¶ 5. He contends he has "never" missed a payment. *Id*. However, he admits that he "typically" makes payments between the 15th and 29th of each month – this supports Plaintiff's assertion that the payments are chronically late, because they are due on the first. However, Duplechan also contends that "Arbor is currently holding approximately $35,000 in overpayments on my account." *Id*. at ¶ 5.

Plaintiff has demonstrated it has a valid claim, which to some degree supports its request for appointment of a receiver.

**2. Fraudulent Conduct**

Plaintiff's motion does not appear to specifically accuse Defendant of engaging in fraud. However, the declaration of Plaintiff's counsel, Phillip Babich, states that during discussions with Defendant about loan default, Defendant represented that it had filed for bankruptcy. ECF No. 6-4 at ¶ 3. Counsel's search of bankruptcy court records did not find any such filing. *Id*. An email communication from Duplechan on January 22, 2026, claimed that he had to file bankruptcy due to Arbor's "servicing misconduct" and imposing "force-placed insurance," even though Duplechan contends that he always had insurance and was making "every mortgage payment on time[.]" ECF No. 6-4 at 25-26.

Plaintiff's supplemental brief takes a more aggressive tone and accuses Defendant of continuing to engage in a "pattern of inaccurate and evasive representations," chronic payment shortfalls, insurance non-compliance, and commingling of assets. ECF No. 16 at 2. Still, the supplemental brief stops short of accusing Defendant of fraud, but concludes by claiming

Defendant has made "false claims of full payment, false denials of commingling, a false representation of having filed for bankruptcy, and a false representation that an inspection had already been completed." ECF No. 16 at 9. These allegations largely appear to concern alleged conduct after the filing of this lawsuit. A property inspection has been completed, and occurred prior to the April 30, 2026 hearing in this case.

This factor does not weigh in favor of appointing a receiver.

**3. Imminent Danger of Waste or Destruction**

Plaintiff's motion does not make a strong argument that there is an imminent danger of waste or destruction of the Property. Plaintiff's motion did raise an issue concerning a delayed inspection of the Property. Some of the communications about the site inspection contained references to prior "deferred maintenance items noted during the October 2024 inspection" and those included: 1) overgrown hedges; 2) expired fire extinguishers; 3) no GFCI outlet in laundry room; 4) debris behind a shed; and 5) need for tree trimming. ECF No. 6-3 at 35. However, an inspection occurred on April 20, 2026, and Plaintiff agrees the Property "is in overall good condition." ECF No. 16 at 6.

Failure to provide insurance could possibly endanger the Property. However, Defendant disputes this allegation and has provided proof of insurance. ECF No. 17-1 at 7-14. Further, it appears that Plaintiff purchased additional insurance for the Property when it believed it was not insured and the parties dispute whether this lender-placed-insurance was necessary.

The Court does not find the Property is in imminent danger of waste or destruction.

**4. Adequacy of Legal Remedies**

In evaluating this factor, the Court may consider whether the value of the Property exceeds the amount secured, and may also consider whether rents are being collected and paid. *See Avalanche Funding*, 2021 WL 1664433, at *4. Neither party has presented information as to the current value of the Property. Defendant's briefing asserts "Bigtime has invested over $500,000 within capital improvements, so Bigtime has doubled the value of the asset." ECF No. 17 at 2. However, that statement is not supported by evidence in the supplemental exhibits.

As to whether rent payments continue to be made, there was a dispute as to that fact at the

hearing. Defense counsel represented that he believed payments were current, and Plaintiff's counsel disagreed. The evidence submitted in the supplemental filing does not establish that payments are current. Defendant submits copies of three checks that were for payments in November 2025, December 2025, and January 2026. ECF No. 17-1 at ¶ 7. Plaintiff states that no payments have been received since on or about January 5, 2026. ECF No. 16-2 at ¶ 7. The record submitted by Plaintiff in early-June 2026 reflects an outstanding balance of over $60,000. ECF No. 16-2 at 8.

The current record does not show that legal remedies would be inadequate.

**5. Balancing Harm to Plaintiff Versus Injury to the Defendant**

The Property is insured, and the Property inspection was positive and did not reflect damage to the Property. Thus, in that respect, Plaintiff is not being harmed. However, according to the latest filing, Defendant is now at least six months in arrears as to rent payments. There does, then, appear to be some ongoing injury to Plaintiff, though imposition of the costs of a Receiver would involve hardship to Defendant.

**6. Likelihood of Success and Irreparable Injury**

It is difficult to determine the likelihood of success on the merits at this time. This action is recently filed. At the hearing, counsel for both parties stated they were relatively new to the case and were unable to answer some of the Court's questions. The evidence and arguments presented show that there are disputes of fact concerning whether the Property was properly insured, whether payments were timely made, and whether they were made in the proper amount. It does appear from the record that Plaintiff will be able to establish that payments were late, and that Defendant made a transfer of a portion of the Property without prior approval of Plaintiff when a second deed of trust was recorded against the Property. Thus, there is a likelihood that Plaintiff can establish a default under the Loan Agreement.

As to irreparable injury, Plaintiff has not presented evidence that the value of the Property is insufficient to secure the Loan. Additionally, Defendant has offered to pay off the Loan. Further, the recent Property inspection shows the Property to be in good overall condition. Plaintiff has not established a likelihood of irreparable injury.

**7. Value of the Property and Financial Standing of Defendant**

In *Canada Life*, the Ninth Circuit stated that its prior case law had looked at various factors and "foremost among them" were "whether the property was of insufficient value to insure payment, and whether the defendant was of doubtful financial standing." 563 F.3d at 844. As stated above, there is not good information in the record as to the current value of the Property. Plaintiff alleges that the original amount of the Loan was $1,261,000. ECF No. 1 at ¶ 8. Defendant states it has invested $500,000 in improvements to the Property. The record does not establish that the current value of the Property is inadequate to secure the Loan amount.

As to Defendant's financial standing, it appears from the comments at the April 30 hearing and in the parties' Status Report (ECF No. 13) that Defendant offered to pay off the loan amount in full. Thus, the current record does not demonstrate that Defendant is of doubtful financial standing. There is some evidence of prior financial difficulty. Duplechan's declaration references "financial strain" during the pandemic and that he "exhausted [his] personal savings and business savings to remain current[.]" ECF No. 9-1 at ¶ 5.

**IV. Conclusion**

Having considered the *Canada Life* factors**,** the Court finds Plaintiff has made an insufficient showing in support of the extraordinary equitable remedy of appointment of a receiver.

Alternatively, Plaintiff requests a turnover order directing that Defendant pay all rents directly to Plaintiff and to turn over all rents collected since default. *Id*. at 14-15. The Court is troubled that Defendant represented at the hearing on April 30, 2026 that rent payments were current, but that subsequently filed documents show that no payment has been made since January 5, 2026. Defendant also represented at the hearing that the second deed of trust had been extinguished and that documentation would be provided shortly. The documentation provided with the supplemental filing confirmed that the process was underway, but that as of May 28, 2026, the lien had not yet been removed. ECF No. 17-1 at 23. Defendant has offered to provide further information on this point. *See* ECF No. 17 at 6 ("Bigtime is prepared to provide additional documentation concerning the lien status, by giving the court and Fannie Mae the

reconveyance of the lien.”). Pursuant to California Civil Code § 2938(c)(2), the Court will order Defendant to turn over all rents collected from the Property from the date of this Order forward, pending the ultimate resolution of Plaintiff’s claims.

By separate order, the Court will set a date for a case management conference.

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1) Plaintiff’s motion to appoint receiver (ECF No. 6) is DENIED;
2) Plaintiff’s request for alternative relief in the form of a turnover of rents is GRANTED IN PART; and,
3) Pending final adjudication of the claims in this case or further order of the Court, Defendant is directed to turn over to Plaintiff all rents collected from 2755 El Caprice Drive, Rancho Cordova, California from the date of this Order forward.

SO ORDERED.

DATED: October 19, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE